JAMES E. PYLE, executor, &c., et al., complainants-respondents,

*v.*

E. CHARLES ALTSHUL, defendant-appellant.

[Decided February 6th, 1939.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The estate of Thomas Smith was the owner of dwelling house property in Jersey City, sold to defendant, Altshul, for unpaid taxes and water rents under two separate tax sales in 1920 and 1921. Tax sale certificates were issued to Altshul who entered into possession and thereafter brought suits againt Charles Haubert for use and occupation thereof and recovered seven judgments against him for a total of $3,665.60, the first judgment being recovered January 19th, 1921, and the last, May 28th, 1926, the period of use and occupation being from May 18th, 1920, to April 18th, 1926. Altshul undertook to perfect his tax titles but failed to bring his proceedings to conclusion and an agreement was entered into between the Smith estate and him whereby that estate agreed to sell and Altshul agreed to purchase for $7,000, the premises which were the subject of the tax sales. That agreement provided that at the time of passing title Altshul should receive credit on the purchase price for all money due under the tax sales, and provision was made for payment of the balance of the purchase price, mainly by Altshul's bond and purchase-money mortgage. The contract for sale and purchase was closed August 14th, 1926, at which time there was deducted from the purchase price of $7,000 and allowed to Altshul the sum of $2,225.30 being the full amount due under his tax sales, with interest, penalties and subsequent taxes and water rents paid by him, and the balance of the purchase

price was satisfied as provided by the agreement of sale, the executors and trustees of Smith's estate executing and delivering to Altshul a deed of conveyance.

"At the time of closing title no definite agreement was made touching the ownership of the judgments Altshul had recovered against Haubert, and Altshul made no attempt to enforce them until about ten years later when Haubert died; whereupon Altshul asserted ownership of the judgments and began to press for payment out of an interest he claimed Haubert had in the Smith estate and out of any estate left by Haubert. The executor and trustee of the Smith estate and the executor and individuals interested in the Haubert estate then filed their bill in this cause against Altshul to have it decreed that he holds the judgments in trust for the Smith estate and that he assign them to said estate and be restrained from proceeding to enforce them. The ownership of those judgments is the question now to be determined and that question must be decided upon the circumstances surrounding the entire transaction with such aid as is afforded by certain provisions contained in the agreement for sale, the conveyance and a so-called release executed by Altshul on receiving his deed. At the hearing of the cause no testimony was given by either side as to the intention of the parties with respect to the judgments.

"A purchaser of land at a tax sale is entitled to enter into possession and collect rent from the occupant. His rights and liabilities are similar to those of a mortgagee in possession and on redemption from his tax sale he must account to the owner for rent collected. *Merchants and Traders Realty Co.* v. *Stern, 101 N. J. Eq. 629; affirmed, 102 N. J. Eq. 290; Arena* v. *Del-Jersey Realty Co., 119 N. J. Eq. 360.* I think the transaction between the owner of the land in question and Altshul, which culminated in the agreement by Altshul to purchase the tax sold land, under which Altshul received by way of application on the purchase price all he was entitled to have under his tax sales was, in effect, redemption by the owner. It was the same as though the owner had actually redeemed and thereafter conveyed to Altshul.

"On June 10th, 1926, the attorney for the Smith estate wrote Altshul's attorney that he desired to redeem from the sales, stating that if the amount to be paid could not be determined, he would file a bill to redeem. The agreement of sale and purchase followed and it manifests that Altshul assumed that the right to redeem existed because it speaks in several sentences of the amount due under the tax sales. As holder of judgments against the tenant or occupant, Altshul stood in the same position as a tax sale holder who had collected rent and it cannot be doubted that had rent of $3,665.60, represented by the judgments, actually been paid to Altshul, he would have been called upon to account to the owner. The interest and penalties Altshul received was compensation for loss of rent. Equitably he should not have both. As he had collected nothing there was nothing to account for but the judgments which represented rent, should have been assigned to the owner and the failure to assign was due to a mistake or oversight in which the parties shared, unless it can be said that the agreement for sale, the conveyance and the release executed by Altshul indicate otherwise.

"The agreement for sale provides that Haubert should be released from liability for use and occupation of the premises 'other than the liability on any judgment already entered' and the conveyance was made 'subject to any sales for unpaid taxes made by the city of Jersey City and to all claims thereunder and to the rights of any one claiming by, under or from the purchaser at any tax sales.' Simultaneously with the delivery of that deed, Altshul executed and delivered to Haubert a release for any rent or money due for use and occupation of said premises, 'excepting claims under any judgments for such rent or use and occupation that have already been entered.' There is nothing in the agreement, deed or release which states that ownership of the judgments was to remain in Altshul. I think the intention was to keep the judgments alive as against Haubert, but that Altshul was not to retain ownership thereof. By his release Altshul merely excepted 'claims under any judgments' and not a claim to ownership of the judgments. Rather, it seems to

me, that the Smith estate expected that the judgments were to be held open for its benefit, so as to be able to charge them against Haubert upon a settlement of his interest in the Smith estate.

"I feel satisfied that there was, in effect, a redemption of the property from the tax sales, by payment to Altshul of the full amount due him thereunder and therefore he was not entitled to hold the judgments against Haubert as effective in his hands and that they should have been assigned to the Smith estate. Altshul will be restrained from any proceeding to enforce the judgments and he will be directed to assign them to the Smith estate.

"A counter-claim filed by Altshul seeks discovery of assets of Haubert's estate and an accounting therefor, in order that such assets may be applied to payment of the judgments. Having decided that Altshul is not the owner of the judgments, his counter-claim will be dismissed."

*Messrs. Gross & Gross,* for the appellant.

*Mr. James E. Pyle,* for the respondents.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court of chancery by Vice-Chancellor Fielder.

*For affirmance*—Trenchard, Case, Bodine, Donges, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Walker, JJ. 10.

*For reversal*—The Chief-Justice, Parker, Heher, Perskie, Porter, JJ. 5.